UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD ALLEN MOORE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:17-CV-1912 JAR |
| CITY OF ST. LOUIS, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This action is before the Court on plaintiff's motion for temporary restraining order [Doc. #2], as well as plaintiff's renewed motion for temporary restraining order [Doc. #9], brought pursuant to Federal Rule of Civil Procedure 65.

The Court conducted a hearing on this matter on July 13, 2017. Plaintiff appeared pro se and represented himself. The City of St. Louis was represented by the City Counselor's Office. Evidence was presented and testimony was taken.

Based on the evidence presented and the arguments of the parties, Plaintiff's motions for temporary restraining order were denied for the reasons stated on the record. The Court supplements those reasons with the following written findings.

**I.    Background and Hearing Information**

Plaintiff, proceeding pro se, filed this action on July 5, 2017, pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. In his original complaint [Doc. #1], plaintiff named the following as defendants in this action: the City of St. Louis; St. Louis Mayor Lyda Krewson; Biddle House Opportunity Center; St. Patrick Center; Peter and Paul Community Services, Inc.;

Biddle House Staff Person Keneesha Unknown; Biddle House Staff Person Emma Unknown; and Six John Doe Biddle House Staff Persons.[1]

Plaintiff sought leave to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915 [Doc. #4], and with the filing of his original complaint, plaintiff filed a motion for temporary restraining order [Doc. #2] and a motion for preliminary injunction [Doc. #6].

In his originally-filed complaint, as well as his motions for injunctive relief, plaintiff asserted that he was a homeless resident of the City of St. Louis and he had sought services from the Biddle House, a facility owned by the City of St. Louis which purportedly "serves the needs of the homeless and is staffed by St. Patrick Center" and also serviced by Peter and Paul Community Services, Inc.

Plaintiff stated in his complaint that in June of 2017, he was given a "routing" slip at Biddle House, that allowed him to take showers, wash his clothes and obtain meals. Plaintiff stated that after he became a "critic" of Biddle House, Peter and Paul Community Services, Inc. and St. Patrick Center, employees of Biddle House began to retaliate against him by refusing him showers, laundry services and meals.

On July 5, 2017, when he hand-filed his original complaint, plaintiff sought an ex parte hearing on his temporary restraining order, but he was asked by the Court to notify defendants and/or their counsel of his intent to seek a hearing prior to being given a hearing date.

On July 10, 2017, plaintiff filed an amended complaint in this action [Doc. #7], seeking to add to his jurisdictional basis for bringing the present suit. In his amended complaint, plaintiff also added a claim that he was being denied an overnight bed by Biddle House. All of his other claims remained substantially the same.

---

[1] Although plaintiff has filed a second amended complaint, the same defendants are named in that pleading.

2

On July 13, 2017, plaintiff filed a second amended complaint [Doc. #8], as well as a renewed motion for temporary restraining order [Doc. #9] and a renewed motion for preliminary injunction [Doc. #11]. In his second amended complaint, plaintiff states that Biddle House is refusing to renew his routing slip[2], effectively cutting him off from every service offered by Biddle House, including food, laundry, showers and a nightly bed. When he came to the Court's front counter to file his second amended complaint, plaintiff stated that he had contacted a lawyer on behalf of the City of St. Louis about his request for an emergency hearing, and he claimed that he had no other means to obtain overnight accommodations.[3]

As a result of plaintiff's allegations in his renewed motion for temporary restraining order, on July 13, 2017, the Court held an emergency hearing on the motion for temporary restraining [Doc. #2] order and the renewed motion for restraining order [Doc #9]. Present at the hearing for the City of St. Louis was Assistant City Counselor, Tony Relys. Plaintiff represented himself at the hearing and did not present any witnesses on his own behalf. Mr. Relys submitted the testimony of Mr. Eddie Roth, Special Assistant to the Mayor of St. Louis City; although he testified that he was the former Director of Human Services for the City of St. Louis.

Plaintiff testified under oath that he was a homeless resident of the City of St. Louis who had been using the services of Biddle House. He stated that it was his belief that after he criticized the employees of Biddle House, as well as St. Patrick's Center on certain media websites, as well as on the Mayor's website and the City's website, that he was treated by Biddle House in a retaliatory manner. He claimed that he was no longer being offered laundry services at Biddle House, nor being allowed to take a shower or being given meals. Plaintiff offered as evidence an expired routing slip showing, purportedly, that he would no longer be eligible for services at

---

[2] A routing slip identifies services open to homeless persons at Biddle House.
[3] Plaintiff did not make this statement under oath.

3

Biddle House. When questioned, plaintiff admitted that his main issues concentrated on the fact that he believed he was being denied showers and the ability to wash clothes during the week of July 13, 2017. He claimed he was still on a list for an overnight bed at Biddle House, but he was not sure when his name would move to the top of the list. Plaintiff pointed to an expired "routing slip" as the cause of his difficulty in obtaining showers and laundry services; however, he insisted he was being denied services due to retaliation. Nonetheless, he did not articulate one particular staff member who he believed had seen his media posts and denied him services as a result of the posts. Plaintiff stated that he did not mind not having an overnight bed because he could "lay his head anywhere."

Mr. Roth also testified under oath. He explained that he is presently a special assistant to the Mayor and that he was formerly City Director of Human Services, which was the City Department in charge of Homeless Services. He stated that Biddle House was owned by the City of St. Louis and had a contract with St. Patrick Center to provide services to the homeless, but that St. Patrick Center had a sub-contract with Peter and Paul Community Services, Inc. to provide additional services.

Mr. Roth stated that in his time as Director of Human Services he had become familiar with many of the employees at Biddle House, and he knew the Directors at St. Patrick Center and Peter and Paul Community Services, Inc.. Mr. Roth testified that he had contacted several persons at Biddle House to see if they had knowledge of the issues in the present lawsuit.

Mr. Roth testified that Gene Schmitt was the Facility Manager, and Don Schiff was the Shelter Manager and Mr. Roth had contacted both individuals prior to the hearing to see if Mr. Moore was being denied services by Biddle House for any reason at all. Mr. Roth reported that plaintiff was in good standing at Biddle House and he was welcome there at any time. In fact,

4

Mr. Schiff had provided his cell phone number to Mr. Roth to give to Mr. Moore to make sure services were provided to Mr. Moore to his satisfaction. Mr. Roth indicated that Mr. Moore's routing slip could be renewed and suggested Mr. Moore speak with Mr. Schiff in order to achieve this purpose.

When the Court questioned plaintiff about whether he had sought renewal of his routing slip and who had purportedly denied him a new routing slip, plaintiff was unable to tell the Court the person's name that had allegedly denied him a routing slip.

Mr. Roth stated unequivocally at the hearing that he had not known about plaintiff's purported complaints about Biddle House prior to seeing a copy of his complaint in this action.

## II. Legal Standard and Injunctive Relief

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "In balancing the equities no single factor is determinative." *Id.* These factors are also considered to determine the propriety of a temporary restraining order. *See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).

The relevant inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. The burden of proof is on the party seeking injunctive relief. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *United States v. Dorgan*, 522 F.2d 969, 973 (8th Cir. 1975).

## III. Plaintiff's Allegations Within the Second Amended Complaint

5

Plaintiff alleges three claims against defendants in the second amended complaint. Plaintiff first alleges that all of the defendants, in their individual and official capacities, retaliated against plaintiff in violation of the First Amendment by failing to provide him services at Biddle House. In plaintiff's second claim for relief he alleges that he was denied property, in violation of the Fourteenth Amendment, by defendants, purportedly when they kept his clothing at Biddle House after an alleged verbal dispute. Last, plaintiff asserts that defendants deprived plaintiff of procedural due process in violation of the Fourteenth Amendment.

## IV.  Dataphase Factors

The Court denied plaintiff's requests for injunctive relief at the July 13, 2017 hearing based primarily on plaintiff's failure to present any evidence to show a likelihood of success on the merits or a threat of irreparable harm.

First and foremost, the evidence produced at the hearing, primarily through plaintiff's own testimony, showed that there was no need for an emergency injunction in this matter. Plaintiff stated that he was on a list for a bed at Biddle House and he was not sure exactly who was purportedly "retaliating against him." He claimed that his lack of shower and laundry services were a central issue at the hearing, because he could "lay his head anywhere," but he was not able to articulate the individual he believed was in charge of renewing his routing slip at Biddle House in order to obtain services.

Additionally, Mr. Roth testified that plaintiff was in good standing at Biddle House, able to receive services there, and provided plaintiff with Mr. Schiff's cell phone number in order to contact him to work out how to receive services.[4] Plaintiff failed to produce evidence of any

---

[4]The Court believes this matter may have been a misunderstanding of how to attain a renewal of a routing slip, and is hopeful that plaintiff will be able to attain the services he needs from Biddle House in the future.

6

adverse action taken against him, let alone knowledge by defendants that he was asserting his First Amendment rights such that he could make a retaliation claim under the First Amendment. Thus, he has failed to show a likelihood of success on the merits.

Similarly, plaintiff has failed to show that not granting the injunction would irreparably harm plaintiff. Given that Mr. Roth stated under oath that he and Mr. Schiff were willing to work with plaintiff to assist him in attaining services at Biddle House, there is no harm to plaintiff at the present time. As such, plaintiff's motions temporary restraining order and for renewed restraining order were denied at the hearing, and will be denied below.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motions for temporary restraining order and renewed temporary restraining order [Doc. #2 and #9] are **DENIED.**

**IT IS FURTHER ORDERED** that service on the second amended complaint shall effectuate in accordance with the written order entered on July 13, 2017. *See* Docket No. 15.

Dated this 14th Day of July, 2016.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE